FILED
U.S. DISTRICT COURT
2009 SEP 30 AM 9:23

SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MEGAN SANDS, )
 )
 Plaintiff, )
 )
v. ) CASE NO. CV608-009
 )
KAWASAKI MOTORS CORPORATION )
U.S.A. and KAWASAKI HEAVY )
INDUSTRIES, LTD., )
 )
 Defendants. )
 )

## O R D E R

Before the Court are Defendants' Motion in Limine to Exclude Testimony of Dr. Edward Karnes (Doc. 60), Motion in Limine to Exclude Testimony of Michael Burleson (Doc. 62), and Motion for Summary Judgment (Doc. 61). Defendants' Motion to Exclude Testimony of Dr. Edward Karnes is **GRANTED IN PART** and **DENIED IN PART**. Dr. Karnes may not testify concerning any specific alternative design. Defendants' Motion to Exclude Testimony of Mr. Michael Burleson is **GRANTED IN PART** and **DENIED IN PART**. Mr. Burleson may not testify as to the feasibility of an engine cut-off switch

or fixed handles as alternative designs. Defendants' Motion for Summary Judgment is **DENIED**.[1]

## BACKGROUND

In May 2006, Plaintiff Megan Sands was visiting the Bahamas. (Doc. 61 at 2.) Plaintiff and a friend, Ms. Lauren Pinder, traveled along the shoreline using a personal watercraft ("PWC") designed by Defendants. (Id.) Ms. Pinder sat at the controls and operated the PWC, while Plaintiff sat directly behind her at the rear of the watercraft. (Id.) After dismounting the PWC and visiting with friends, the pair climbed back on the vehicle, with Ms. Pinder behind the controls and Plaintiff as a passenger. (Id.) On this occasion, Plaintiff fell off the back of the PWC after Ms. Pinder engaged the throttle. (Id.) Because riding on the PWC required straddling the

---

[1] After careful consideration, Defendants' Motion for Hearing (Doc. 63) is **DENIED**. Also, Plaintiff has filed a Motion to Strike Defendants' Motion for Summary Judgment. (Doc. 72.) In her Motion, Plaintiff argues that Defendants' Motion for Summary Judgment should be stricken because they failed to comply with Southern District of Georgia Local Rule 56, which required Defendants to submit a separate statement containing material facts that are not in issue. However, the Magistrate Judge granted as unopposed Defendants' Motion for Leave to File Separate Statement of Material Facts in Support of Motion for Summary Judgment. (Doc. 85.) Therefore, Defendants are now in compliance with Local Rule 56. Accordingly, Plaintiff's Motion is **DENIED**.

seat, Plaintiff's legs were open when she entered the water. (Id.) Plaintiff was wearing a bikini bathing suit at the time. (Id.) Unfortunately, expelled water from the vehicle's jet nozzle, which leaves the PWC at a high rate of speed, was forcibly injected into her vagina and rectum, causing significant injuries. (Id.)

As a result of the accident, Plaintiff filed this action, asserting strict liability and negligence claims based on failure to warn and defective design.[2] (Doc. 49.) With respect to the failure to warn claim, Plaintiff alleges that Defendants failed to include adequate warnings about the dangers to PWC passengers and failed to place the warnings in a location easily noticeable by PWC passengers. (Id. ¶¶ 26-35.) With regard to the defective design claim, Plaintiff alleges that the PWC could have been safer if it

---

[2] In her Amended Complaint, Plaintiff labels two claims "design and manufacturing defect." (Doc. 49 at 3, 8.) However, Plaintiff's Amended Complaint only alleges facts supporting a claim for defective design. (Id. ¶¶ 17-25, 42-52.) Therefore, the Court assumes that, despite the label, Plaintiff is bringing only a claim for defective design.

3

included a seatback, an engine cut-off switch, or fixed handles.[3] (Id. ¶¶ 17-25.)

Plaintiff has engaged Dr. Edward Karnes as a human factors expert to testify concerning Plaintiff's failure to warn claim and Mr. Michael Burlson as a PWC engineer to testify concerning Plaintiff's defective design claim. (Doc. 58.) Defendant has filed Motions to Exclude the testimony of each expert. (Docs. 60, 62.) With respect to Dr. Karnes, Defendants argue his testimony should be excluded because he is not qualified to testify that the appropriate remedy is a design modification. (Doc. 62 at 8-10.) With respect to Mr. Burleson, Defendants assert that his testimony concerning various reasonable alternative designs to the PWC should be excluded because they have not been adequately tested. (Doc. 60 at 8-19.)

Plaintiff objects to the exclusion of either expert. Regarding Dr. Karnes, Plaintiff contends that he testified

---

[3] In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment on the negligence claims if they are awarded summary judgment on the strict liability claims. Because the Court has determined that Defendants are not entitled to summary judgment on the strict liability claims, Defendants' Motion for Summary Judgment with respect to the negligence claims is **DENIED**.

only as to the need to modify the design based on the general ineffectiveness of PWC warning labels, not on how the PWC should be redesigned. (Doc. 71 at 8.) Addressing Mr. Burleson, Plaintiff argues that his testimony is reliable because he conducted several tests of the proposed seatback designs. (Doc. 70 at 5-7.)

In conjunction with the Motions to Exclude, Defendants filed a Motion for Summary Judgment. In their Motion, Defendants argue that Plaintiff has failed to provide evidence concerning her failure to warn claim because her own expert admitted that the warnings were adequate. (Doc. 61 at 7-9.) Also, Defendants contend that Plaintiff cannot prove her claim for defective design if the Court excludes the testimony of Mr. Burleson. (Doc. 61 at 11-17.) That is, Defendants' Motion for Summary Judgment on the defective design claim relies on this Court granting the Motion to Exclude.

**ANALYSIS**

I. Motions to Exclude

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"As the Supreme Court made abundantly clear in Daubert, Rule 702 compels district courts to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation omitted). The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Id. While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate. Quiet Tech. DC-8, Inc. v. Hurel-Dubois,

UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The burden of establishing that these requirements are met rests with the proponent of the expert testimony, and not the Daubert challenger. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

A.  Dr. Karnes

Defendants contend that Dr. Karnes is unqualified to give his opinion that, because passengers are unlikely to follow warnings, a safer design is warranted.[4] (Doc. 62 at 7.) Plaintiff admits that Dr. Karnes is not qualified to testify concerning any particular alternative design, but argues that Dr. Karnes is qualified to testify as to the need for an alternative design based on the ineffectiveness of warnings to prevent this type of incident. (Doc. 71 at 8.)

The Court concludes that Dr. Karnes may testify concerning the need for design modification in light of the ineffectiveness of PWC warnings. Here, Dr. Karnes's general opinion that design modifications are more effective than warning labels is not so far outside his area of expertise to render his testimony unreliable. That is, it relies on his expertise regarding warnings, not

---

[4] Defendants do not challenge Dr. Karnes's qualifications as an expert on warning labels.

7

designs. However, Dr. Karnes must limit his testimony to only the need for an alternative design. He may not propose any specific design modification, which would be beyond his qualifications. Accordingly, Defendants' Motion to Exclude Dr. Karnes's testimony is **GRANTED IN PART** and **DENIED IN PART**.

B. <u>Mr. Burleson</u>

Defendants argue that Mr. Burleson's testimony should be excluded because his opinion concerning seatbacks, engine cut-off switches, or fixed handles as reasonable alternative designs is unreliable. (Doc. 60 at 11.) Specifically, Defendants contend that neither Mr. Burleson nor the engineering community adequately tested his proposed designs. (<u>Id.</u>) Also, Defendants note the lack of peer reviewed literature and Mr. Burleson's lack of publications regarding seatbacks on PWCs. (<u>Id.</u>) In response, Plaintiff asserts that Mr. Burleson performed adequate testing of his proposed seatback. (Doc. 70 at 5-6.)

When a court considers the reliability of a particular expert's opinion, it considers, to the extent possible, (1) whether the expert's theory can be and has been tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error of

the particular scientific technique, and (4) whether the technique is generally accepted in the scientific community. Quiet Tech., 326 F.3d at 1341 (citing McCorvey, 298 F.3d at 1256). These factors "do not constitute a 'definitive checklist or test.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993)). Rather, the applicability of these factors "depends upon the particular circumstances of the particular case at issue." Id.

After reviewing Mr. Burleson's report (Doc. 58) and deposition testimony (Doc. 68), the Court concludes that Mr. Burleson's opinions were adequately tested to meet the reliability prong of Rule 702. In his report, Mr. Burleson states that he "tested passenger seatbacks on various personal watercraft." (Doc. 58, Burleson Report at 9.) Also, Mr. Burleson testified during his deposition as to the level of testing he performed regarding a seatback design. (Doc. 64 at 131:8 to 136:14.) Mr. Burleson concluded that, based on his testing, a seatback could provide "both comfort and safety without sacrificing utility of the product or creating dangerous hazards." (Doc. 58, Burleson Rpt. at 9.) In light of this testing,

the Court is unable to say that Mr. Burleson's testimony regarding a fixed seatback is unreliable.[5]

While Defendants note the lack of peer reviewed literature and Mr. Burleson's lack of publications, they fail to offer any substantive argument that these deficiencies make his testimony unreliable. Regardless, these deficiencies are not so great as to affect the reliability of Mr. Burleson's testimony. As the court in Kumho Tire noted, not all the factors mentioned in Daubert are pertinent when assessing the reliability of an expert's testimony. Kumho Tire, 526 U.S. at 151 ("It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist."). Therefore, this Court concludes that the absence of peer reviewed literature and publications by Mr. Burleson do not render his testimony unreliable. Accordingly, Defendant's Motion to Exclude is **DENIED** with respect to Mr. Burleson's testimony regarding the seatback.

---

[5] Defendants' arguments that Mr. Burleson's testing was either insufficient or conducted under dissimilar conditions are unavailing. Both these arguments address the creditability of the testimony, not its admissibility. See Quiet Tech., 326 F.3d at 1341.

Plaintiff failed to respond to Defendants' assertions that Mr. Burleson's testimony concerning the engine cut-off switch and fixed handles was unreliable. Plaintiff's failure to respond indicates that she has no opposition to this portion of Defendants' Motion. See S.D. Ga. LR 7.5 ("Failure to respond [to a motion] within the applicable time period shall indicate that there is no opposition to a motion."). Accordingly, Defendants' Motion to Exclude is **GRANTED** with respect to Mr. Burleson's testimony regarding these two designs.

II. Motion for Summary Judgment

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the

nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

A. Failure to Warn

Defendants argue that Plaintiff has failed to establish a material issue of fact with respect to Plaintiff's failure to warn claim because her own expert concedes that Defendants' warnings were adequate.[6] (Doc. 61 at 8-9.)

During his deposition, Dr. Karnes testified as follows:

> Q: From your standpoint the warning in this case was adequate?
>
> A: As far as I'm concerned, it was adequate. I wouldn't be in a position of saying the warning, per se, is inadequate, that's correct.

(Doc. 66 at 24:10-14.) In addition, Dr. Karnes testified that his criticism would not render the existing warnings

---

[6] The Parties agree that this case is governed by federal maritime law. (Doc. 61 at 4; Doc. 75 at 6.)

13

inadequate. (Id. at 59:10-18.) However, Dr. Karnes also stated that "[t]he warning fail[ed] to emphasize the fact that falling off to the rear is especially dangerous for a person, especially females riding as a passenger." (Id. at 69:7-11.) In addition, Dr. Karnes opined that the inclusion of this information in a warning would be useful. (Id. at 69:15-22.)

After reviewing Dr. Karnes's deposition testimony, the Court concludes that Defendants' Motion for Summary Judgment must be denied because an issue remains as to the adequacy of Defendants' warning. It does appear that, at various points in the deposition, Dr. Karnes conceded the adequacy of the warning. However, Dr. Karnes also testified as to the ineffectiveness of the warnings on several occasions. While this may make Dr. Karnes a very ineffective witness, it does not preclude a jury from finding that Defendants failed to warn Plaintiff of both the extent of the danger and the severity of any injury. See Quiet Tech., 326 F.3d at 1341 ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence.") Therefore, Defendants are not entitled to summary judgment with respect to Plaintiff's failure to warn claim.

14

B.  Defective Design

Defendants argue that they are entitled to summary judgment on Plaintiff's defective design claim because Plaintiff failed to provide admissible evidence of a reasonable alternative design. (Doc. 61 at 9-10.) To establish a claim for defective design, Plaintiff must establish that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design." Restatement (Third) of Torts: Products Liability § 2(b) (1998).[7] Defendants' argument, however, was premised on this Court granting their Motion to Exclude with respect to Mr. Burleson. Because the Court has denied Defendants' Motion to Exclude, Plaintiff has presented admissible evidence of a reasonable alternative design. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**.

**CONCLUSION**

Defendants' Motion to Exclude Testimony of Dr. Edward Karnes is **GRANTED IN PART** and **DENIED IN PART**. Dr. Karnes

---

[7] The Court rejects Plaintiff's argument that, in the absence of a federal case directly on point, Georgia state law should apply to her design defect claim. See Furness Withy (Chartering), Inc., Pan. v. World Energy Sys. Assocs., Inc., 772 F.2d 802, 807 n.5 (11th Cir. 1985) ("The district court properly looked to the Restatement [of Torts] for guidance in resolving the issues raised by this maritime case.").

15

may not testify concerning any specific alternative design. Defendants' Motion to Exclude Testimony of Mr. Michael Burleson is **GRANTED IN PART** and **DENIED IN PART**. Mr. Burleson may not testify as to the feasibility of an engine cut-off switch or fixed handles as alternative designs. Defendants' Motion for Summary Judgment is **DENIED**.

SO ORDERED this 29th day of September, 2009.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA